**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ANTHONY TYRONE LLOYD,

                Plaintiff,

                                    Case No. 3:15-cv-1492-J-JRK

vs.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                Defendant.
_____/

## OPINION AND ORDER[2]

### I. Status

Anthony Tyrone Lloyd ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of a condition affecting his back and legs. See Transcript of Administrative Proceedings (Doc. No. 7; "Tr." or "administrative transcript"), filed March 4, 2016, at 445. Plaintiff filed applications for DIB and SSI on May 14, 2012, alleging in both an onset date of December 31, 2008. Tr. at 392-93 (DIB); Tr. at 399-400 (SSI). Plaintiff's applications were denied initially, Tr. at 325, 327-28 (DIB); Tr. at 326, 332-33 (SSI), and were denied upon reconsideration, Tr. at 340, 344-45 (DIB); Tr. at 341, 349-50 (SSI).

On February 12, 2014, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. at 2-33. At the hearing, Plaintiff's alleged onset date was amended to March 21,

---

[1]     Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 8), filed March 4, 2016; Reference Order (Doc. No. 9), entered March 7, 2016.

2012. Tr. at 4-5. The ALJ heard testimony from a vocational expert ("VE") and from Plaintiff, who was represented by counsel. Tr. at 3-33. On April 15, 2014, the ALJ issued a Decision finding Plaintiff not disabled "from March 21, 2012, through the date of th[e D]ecision," and denying Plaintiff's claims. Tr. at 256; see Tr. at 244-56. Plaintiff then requested review by the Appeals Council, Tr. at 263, and submitted to the Council additional medical records, Tr. at 39, 40, 42-239, 1105-25. On October 14, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. Tr. at 35-38. On December 18, 2015, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, overall, Plaintiff argues that the ALJ failed to properly take all of Plaintiff's impairments into account and that the Appeals Council failed to consider relevant medical evidence submitted after the ALJ's Decision. See generally Plaintiff's Memorandum in Opposition to the Commissioner's Decision (Doc. No. 14; "Pl.'s Mem."), filed June 6, 2016. Defendant filed a Memorandum in Support of the Acting Commissioner's Decision (Doc. No. 15; "Def.'s Mem.") on August 2, 2016. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons discussed below.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial

---

[3] The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-2-

gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 246-56. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since March 21, 2012, the amended alleged onset date." Tr. at 246 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: lumbar degenerative disc disease, generally mild to moderate, status post surgery." Tr. at 246 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 249 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work . . . except he can never climb ropes, ladders or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. [Plaintiff] must avoid concentrated exposure to vibration, the use of moving machinery and exposure to unprotected heights. He is limited to occupations which do not require complex written or verbal communication. [Plaintiff] can perform simple, routine and repetitive tasks.

Tr. at 249 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "Material Handler." Tr. at 254 (emphasis and citation omitted). At step five, the ALJ considered Plaintiff's age (thirty-nine (39) years old on the alleged onset date), "limited education," work experience, and RFC, and the ALJ determined that "there are

jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 254-55 (emphasis and citation omitted). Relying on the testimony of the VE, the ALJ identified as representative jobs a "Cleaner, housekeeping"; an "Assembler, small products I"; and a "Bagger." Tr. at 255 (some capitalization omitted). The ALJ concluded that Plaintiff "has not been not under a disability . . . from March 21, 2012, through the date of th[e D]ecision." Tr. at 256 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff raises basically two main issues on appeal: (A) whether the ALJ's hypothetical question posed to the VE failed to take into account all of Plaintiff's impairments; and (B) whether the Appeals Council erred by failing to consider "the post-[D]ecision medical evidence." Pl.'s Mem. at 9-10. These two issues are addressed separately below.

To the extent Plaintiff attempts to raise other issues—such as whether the ALJ failed to weigh medical opinions in the record or failed to consider the necessity of a sit/stand option—such issues are deemed to be waived for lack of development. See, e.g., N.L.R.B. v. McClain of Ga., Inc., 138 F.3d 1418, 1422 (11th Cir. 1998) (stating that "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived"); see also T.R.C. ex rel. Boyd v. Comm'r, 553 F. App'x 914, 919 (11th Cir. 2014) (citing McClain in a Social Security appeal and noting that the appellant "fail[ed] to develop any arguments demonstrating that the ALJ erred in his conclusions . . .").

### A. VE Hypothetical

An ALJ poses a hypothetical question to a VE as part of his step-five determination of whether the claimant can obtain work in the national economy. See Wilson, 284 F.3d at 1227. When the ALJ relies on the testimony of a VE, "the key inquiry shifts" from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE. Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished) (citation omitted).

In determining an individual's RFC and later posing a hypothetical to a VE that includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1545(a)(2); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir.

1985) (stating that "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling" (internal quotation and citations omitted)); Wilson, 284 F.3d at 1227 (stating that "for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments" (citation omitted)).

Here, the hypothetical that the ALJ posed to the VE and later relied on in the Decision comprised the same limitations as set forth in the RFC finding stated in the Decision. See Tr. at 26-27 (hypothetical to VE), 249 (RFC finding). Specifically, the ALJ described the following hypothetical individual to the VE:

> This individual would . . . [be l]imited to work at the light exertional level, defined as lifting up to 20 pounds occasionally, lift/carry up to 10 pounds frequently, standing, walking for about six hours and sitting for up to six hours in an eight-hour workday with normal breaks. In addition, limited to no climbing of ladders, ropes or scaffolds, limited to occasional climbing of ramps or stairs, limited to occasional balancing, occasional stooping, occasional kneeling, occasional crouching and occasional crawling. Also must avoid concentrated exposure to vibration. Must avoid concentrated use of moving machinery and must avoid concentrated exposure to unprotected heights. Also limited to occupations which do not require complex, written or verbal communication. And the individual is able to perform simple, routine and repetitive tasks.

Tr. at 27.

Plaintiff asserts that the hypothetical presented to the VE "did not include appropriate restrictions and limitations as to [Plaintiff's] physical and psychiatric state/condition." Pl.'s Mem. at 6. Specifically, Plaintiff states that the hypothetical "did not in any way take into consideration the necessity of a sit/stand option at will, the use of a cane while standing and/or ambulating, or the effects of medications with regard to focus, concentration, pace,

and persistence." Id. at 9.  Plaintiff also contends, essentially, the ALJ failed to sufficiently account for Plaintiff's dysthymic disorder and low IQ.[4]  See id. at 6.

Below, the undersigned considers whether the following respective limitations were sufficiently accounted for in the hypothetical: (1) Plaintiff's use of a cane; (2) medication side effects; and (3) dysthymic disorder and low IQ.[5]

1. Use of a Cane

In arguing a cane is medically required, Plaintiff notes that he was prescribed a walker after he had back surgery on January 15, 2013. Pl.'s Mem. at 3-4 (citing Tr. at 901-14, 1099-1101).  Plaintiff asserts that he "continued to use either a walker or a 4-prong cane from the date of his lower back surgery through the date of the hearing and beyond." Id. at 4 (citing Tr. at 1102-04). Plaintiff states that in December 2013, his primary care physician "reiterated" "the need for a hand held assistive device" and also "documented" a prescription for a cane. Id. (citing Tr. at 1102-04).  According to Plaintiff, "given the ongoing nature of the injury and radiculopathy, a cane was again prescribed on June 12, 2014, by Family Care Partners-Arlington due to back pain that had an onset that was 'gradual without injury.'" Id. (citing Tr. at 62-66).

In the Decision on April 15, 2014, the ALJ addressed Plaintiff's alleged need to use a walker or cane. See Tr. at 252.  Overall, the ALJ stated, "Although [Plaintiff] testified he uses a cane and walker to ambulate, the record does not establish that a hand-held assistive

---

[4] Plaintiff appears to challenge the fact that the ALJ "did not find that [his] depression and/or dysthymic disorder, coupled with a borderline IQ by estimate, constituted a severe condition which contributed to any alleged disability," Pl.'s Mem. at 6, but Plaintiff does not directly argue that the ALJ failed to account for these limitations in the RFC or hypothetical.  Nonetheless, the issue is addressed here with respect to the hypothetical.

[5] As noted above, the issue of whether Plaintiff needs a sit/stand option is deemed waived here because Plaintiff fails to substantively develop any argument on the issue. See N.L.R.B. v. McClain of Ga., Inc., 138 F.3d at 1422.

-7-

device is medically required pursuant to SSR 96-9p for 12 continuous months or more." Tr. at 252. The ALJ set out the applicable standard for determining whether a hand-held assistive device is medically required:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

Tr. at 252.[6]

Reviewing the evidence, the ALJ concluded Plaintiff's "course of treatment and the overall evidence since his surgery do not establish the medical necessity of a cane." Tr. at 252. Among the evidence, the ALJ noted Plaintiff "was prescribed a walker for ambulation in January 2013 around the time of his surgery" and also that Plaintiff's primary care physician prescribed a four-prong cane in December 2013. Tr. at 252. But as to the latter prescription, the ALJ remarked that "there [were] no treatment notes to indicate the circumstances that led to [Plaintiff's] prescription or the circumstances under which he must utilize the cane." Tr. at 252. Instead, the ALJ stated, Plaintiff "was noted as having 5/5 muscle strength, unassisted, in October 2013," which was "inconsistent with the need for a four prong cane absent medical evidence of a significant exacerbation or decline in [Plaintiff's] condition." Tr. at 252; see Tr. at 1015 (October 22, 2013 treatment note). The ALJ further pointed to "medical records from February, March and October 2013" that "all establish[ed] satisfactory management of symptoms and medical recovery since surgery." Tr. at 252; see Tr. at 924-25 (February 4, 2013 treatment note); Tr. at 956-57 (March 18, 2013); Tr. at 1013-15 (October 22, 2013). In addition, the ALJ noted that Plaintiff "denied new back pain, joint pain or joint swelling" in December 2013, and Plaintiff's "chronic pain

---

[6] Although not specifically attributed, this quoted language comes from SSR 96-9p.

was only mildly exacerbated" in November 2013 and January 2014.  Tr. at 252 (citing Exhibits 34F, 38F, 40F, 41F);[7] see Tr. at 1033 (treatment note from visit on December 13, 2013); Tr. at 1038 (November 13, 2013); Tr. at 1087 (January 13, 2013).

Upon review, substantial evidence supports the ALJ's determination that Plaintiff is not medically required to use a cane—notwithstanding Plaintiff's prescription for a cane on December 17, 2013, see Tr. at 1103.  For instance, the treatment notes reflect that Plaintiff walked unassisted on October 22, 2013, Tr. at 1015, and he "[d]enie[d] new back pain, joint pain, joint swelling" on November 13, 2013, Tr. at 1037.  Regarding Plaintiff's January 2013 back surgery, the November 13, 2013 note states, "He reports he feels better."  Tr. at 1037. A note from about a month later, on December 13, 2013—a few days before the cane prescription—again states Plaintiff "[d]enie[d] new back pain, joint pain, joint swelling," and a physical exam revealed "[n]o change since [the] last [physical exam]."  Tr. at 1033; see Tr. at 1032-35.  Furthermore, although Plaintiff asserts he was prescribed a cane on June 12, 2014, that was almost two months after the ALJ's Decision, and records from June 2014 report that Plaintiff's back pain was worsening at that time.[8]  See Tr. at 215, 233.

Because substantial evidence supports the ALJ's finding, the Decision is due to be affirmed on this issue.

2. Medication Side Effects

Arguing the ALJ erred in failing to consider the side effects of his pain medications, Plaintiff states that "he was required to take numerous prescription medications which significantly impacted his abilities to maintain focus, concentration, pace, and persistence."

---

[7] These exhibits are on the following respective pages in the administrative transcript: Exhibit 34F, Tr. at 1032-38; Exhibit 38F, Tr. at 1087-89; Exhibit 40F, Tr. at 1099-1101; Exhibit 41F, Tr. at 1102-04.

[8] The issue of whether the Appeals Council should have considered these post-Decision records is addressed below.  See infra Part IV.B.

Pl.'s Mem. at 4. Plaintiff asserts the ALJ "found no impediment with regard to focus, concentration, pace, or persistence, based upon pain and/or the need for powerful pain medication." Id. at 5 (citing Tr. at 249). He contends, moreover, that "numerous records in evidence" show "the heavy doses of prescription medication" he needed to take to manage his pain. Id. at 4. Despite such evidence, according to Plaintiff, the Commissioner "totally ignored the prescription record, testimony of [Plaintiff], and the testimony of the [VE] with regard to off-task behavior." Id. at 4-5. Plaintiff does not cite any specific records or testimony.

The ALJ did not specifically address medication side effects in the Decision. As to concentration, persistence, or pace, the ALJ concluded Plaintiff's "has no more than mild difficulties" in this regard. Tr. at 248. As support, the ALJ noted Plaintiff's testimony "that he likes to watch television and sit outside" and "that he is able to shop for his own groceries without assistance." Tr. at 248. The ALJ also took into account the finding of psychological examiner Dr. Peter Knox, Psy. D, that Plaintiff's "memory was intact." Tr at 248; see Tr. at 831.

Considering the record as a whole, the ALJ did not err by not discussing side effects in the Decision, and substantial evidence supports the ALJ's findings as to Plaintiff's ability to maintain concentration, persistence, or pace. Indeed, there is little indication of adverse medication side effects in either Plaintiff's hearing testimony or treatment notes. At the hearing, when asked if he experienced "[a]ny significant side effects" from his medications, Tr. at 11, Plaintiff responded only as follows:

> Some of them make me dizzy, weak and I have to eat a lot of food. If I don't eat a lot of food it make me sick. I be eating, sometime eating a little bit of food, I got to eat a lot of food for the medicine they give me.

Tr. at 12. Based on the treatment notes, it appears that Plaintiff reported on March 5, 2013 that one medication "cause[d] some drowsiness and sometimes [gave] him a headache," Tr. at 921, but generally, the notes reflect no significant side effects from medications, see, e.g., Tr. at 918, 921, 925. Accordingly, the Decision is due to be affirmed on this issue.

### 3.  Dysthemic Disorder and Borderline IQ

Plaintiff appears to argue that the ALJ erred in failing to find that his dysthymic disorder and borderline IQ constitute a severe impairment and to consider this impairment in the overall assessment. See Pl.'s Mem. at 5-6. For support, Plaintiff addresses a consultative examination by Dr. Knox. Id. at 6; see Tr. at 827-31. Plaintiff asserts Dr. Knox made "significant findings that were not discussed or referenced by the Commissioner." Pl.'s Mem. at 6. Among these findings, Plaintiff notes, "Dr. Knox documented that [P]laintiff had an 11th grade education, which was ESE in nature," and that Plaintiff "was not capable of managing his own funds, as he didn't 'count well.'" Id.; see Tr. at 830. Plaintiff further notes, among other things, that Dr . Knox diagnosed him with dysthymic disorder and "strongly estimated" that Plaintiff "had a borderline IQ." Pl.'s Mem. at 6. Plaintiff also points out that Dr. Knox's assessment occurred before Plaintiff's back surgery. Id. (citing Tr. at 827-32).

Dr. Knox evaluated Plaintiff on September 28, 2012. Tr. at 827. He observed Plaintiff had an intact memory, "[n]o significant issues in th[e] area" of concentration and persistence, Tr. at 831, and "no behavioral indications of major anxiety, major depression, or thought disorder at the time of the interview," Tr. at 830. Dr. Knox also observed that "[t]here was no indication of tangential or circumstantial thinking"; that Plaintiff "could relate information in a rational, coherent, and sequential fashion"; and that he "was oriented as to time, place, person, and purpose." Tr. at 829. Moreover, Plaintiff "could count backwards from twenty to one with no errors," "could say his ABC's easily," and "could count by three's from one to

-11-

thirty-seven with no major problems." Tr. at 829. Plaintiff "denied hallucinations and delusions" and "did not appear to be reacting to internal disturbances." Tr. at 830. Dr. Knox assigned Plaintiff a global assessment of functioning ("GAF") score of 60, and he concluded, in part, as follows:

> [Plaintiff] said he is depressed and when discussed he explained he has been depressed since he was 14-years-old and dealing with his pain; with this seen as a mild case of a Dysthymic Disorder. [Plaintiff] is said to have a lower IQ with being in ESE classes most of [h]is life and his history show him to have a Borderline IQ by estimate.

Tr. at 831.

In the Decision, the ALJ reviewed these findings and observations of Dr. Knox. Tr. at 247. The ALJ noted that "[a] GAF score of 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social or occupational functioning (e.g., few friends, conflicts with peers of co-workers) that is almost at a mild level." Tr. at 247 (citing DSM-IV, at 34). The ALJ gave "little weight" to this GAF score assigned by Dr. Knox because it was "not fully supported by [Dr. Knox's] noted findings"—including that Plaintiff had "no difficulty in relating information and no evidence of anxiety"; that he "did not indicate that he had any ongoing difficulty with social interaction"; and that "[n]o ongoing mental health treatment was reported at the time of the evaluation, suggesting satisfactory management of any mental health impairments." Tr. at 247 (citation omitted).

Overall, the ALJ concluded Plaintiff's "medically determinable mental impairments of dysthymic disorder, mild and borderline IQ, by estimate, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." Tr. at 247. But "[i]n an abundance of

caution," the ALJ "limited [Plaintiff] to simple, routine and repetitive tasks . . . and occupations that do not require complex written or verbal communication." Tr. at 247.

To the extent Plaintiff argues the ALJ erred in not finding Plaintiff's dysthymic disorder was severe at step two in the sequential analysis, any such error would be harmless here because the ALJ found in favor of Plaintiff at step two. See Tr. at 246. In this Circuit, "[e]ven if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error [is] harmless because the ALJ concluded that [the plaintiff] had a severe impairment[] and that finding is all that step two requires." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824-25 (11th Cir. 2010) (unpublished) (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1991)).

And to the extent Plaintiff contends Dr. Knox's findings were not sufficiently accounted for in the ALJ's RFC assessment and the hypothetical presented to the VE, the undersigned disagrees. The ALJ properly considered and weighed Dr. Knox's examining opinion. Furthermore, the RFC is supported by substantial evidence, and the hypothetical accounts for all of Plaintiff's impairments.

## B. New Evidence Submitted to the Appeals Council

When the Appeals Council is presented with evidence that was not presented to the ALJ, the Appeals Council is required to consider the evidence if it is "new, material, and chronologically relevant." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.970(b)). Evidence may be chronically relevant even if it post-dates the ALJ's decision. See Washington v. Soc. Sec. Admin., Com'r, 806 F.3d 1317, 1322 (11th Cir. 2015). In Washington, for instance, the United States Court of Appeals for the Eleventh Circuit held that an examining psychologist's opinions were chronically relevant "even though [the psychologist] examined [the claimant] several months after the ALJ's decision." Id. This was because the psychologist reviewed the claimant's treatment records

from the period before the ALJ's decision; because the claimant had suffered from the conditions at issue during the relevant period and "throughout his life"; and because there was "no assertion or evidence" that the claimant's condition "declined in the period following the ALJ's decision." Id. In Stone v. Social Security Administration, 658 F. App'x 551, 555 (11th Cir. 2016) (unpublished), on the other hand, the Court found the circumstances "significantly different" from those in Washington; this was in part because the new records in Stone "demonstrate[d] a worsening" of the relevant symptoms since the time of the ALJ's decision, id.

The Appeals Council "must review the case if 'the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Id. (quoting 20 C.F.R. § 404.970(b)). In the event the Appeals Council considers new evidence but denies review, the Appeals Council is not required to articulate its reasons for denying review. See Parks v. Comm'r, Soc. Sec. Admin., 783 F.3d 847, 852-53 (11th Cir. 2015) (citation omitted) (when "[t]he Appeals Council stated that it considered the new evidence . . . and . . . added the evidence to the record," finding that "[t]he Appeals Council was not required to do more"); Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 785 (11th Cir. 2014).

If a claimant challenges the Appeals Council's denial, a reviewing court must determine whether the new evidence renders the denial of benefits erroneous. See Mitchell, 771 F.3d at 784-85 (citing Ingram, 496 F.3d at 1262); see also Coleman v. Comm'r of Soc. Sec., 454 F. App'x 751, 754 (11th Cir. 2011) (citation omitted) (noting that "[t]he Appeals Council may deny review if the new evidence does not show the ALJ's decision to be erroneous"). In other words, a claimant seeking remand under sentence four of 42 U.S.C. § 405(g), "must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a

-14-

whole." Timmons v. Comm'r of Soc. Sec., 522 F. App'x 897, 902 (11th Cir. 2013) (unpublished) (citing Ingram, 496 F.3d at 1266-67); see also Mitchell, 771 F.3d at 785.

Here, Plaintiff submitted additional medical records to the Appeals Council. Some of these records were added to the record as Exhibits 42F and 43F. See Tr. at 39 (Appeals Council Exhibits List); Tr. at 1105-21 (Exhibit 42F); Tr. at 1122-25 (Exhibit 43F). These include treatment records from February 14, 2014 to May 16, 2014, Tr. at 1107-1120, and a pharmacy print-out listing medications prescribed to Plaintiff in the period between January 25, 2014 and June 23, 2015, Tr. at 1124-25. Many of the records Plaintiff submitted to the Appeals Council were included in the administrative record but not as exhibits. See Tr. at 42-239. Among these were treatment notes and related documents from June 6, 2014 to January 14, 2015. Tr. at 44-60, 63-66, 69-70, 73, 77-91, 94-95, 102-36, 144-58, 162-85, 188-92, 196-204, 207-12, 215-24, 228-30, 233-39. In addition, there was a chest x-ray from March 15, 2011, Tr. at 98; a lumbar spine MRI from March 21, 2012 that was already part of the record before the ALJ, Tr. at 96-97, see Tr. at 704-05 (March 21, 2012 MRI record in Exhibit 10F);[9] and two hospital records from January 2013 that also were in the record before the ALJ, Tr. at 138-140; see Tr. at 871, 886-87 (same documents in Exhibit 24F).

In denying Plaintiff's request for review, the Appeals Council stated on October 14, 2015 that it "considered . . . the additional evidence listed on the enclosed Order of Appeals Council," Tr. at 36, apparently referring to the records that were added as Exhibits 42F and 43F, see Tr. at 40 (Order of Appeals Council, advising that certain additional records submitted to the Council were being made part of the record as Exhibits 42F and 43F). The Appeals Council "considered whether the [ALJ's] action, findings, or conclusion is contrary

---

[9] The MRI record in Exhibit 10F is formatted differently from the one later submitted to the Appeals Council, but it is the same in substance. See Tr. at 96-97, 704-05.

to the weight of the evidence currently of record," and the Council "found that this information does not provide a basis for changing the [ALJ's D]ecision." Tr. at 36. As to the remaining additional evidence, the Appeals Council noted that it looked at the records but concluded they did "not affect the decision about whether [Plaintiff was] disabled beginning on or before April 15, 2014" because these records were "about a later time."[10] Tr. at 36.

Plaintiff contends, "The Appeal[s] Council's total and complete refusal to consider any of the post-[D]ecision medical evidence was without a proper legal foundation." Pl.'s Mem. at 8. This evidence is relevant, according to Plaintiff, because "it involved or was directly related to issues adjudicated by the ALJ, and [it] related to the period of time on or before the date of the ALJ['s D]ecision." Id. Plaintiff states that "multiple records are in close proximity to the date of the [D]ecision and clearly concern care and treatment [Plaintiff] received as to the conditions that were the subject of the [D]ecision."[11] Id. at 5. Plaintiff further states, "The vast majority of the records clearly relate to the medical conditions under consideration by the ALJ." Id.

Elsewhere in his Memorandum, Plaintiff makes similarly general assertions regarding this issue. See id. at 8-10. He contends, for instance, as follows:

> Much of the evidence [Plaintiff submitted to the Appeals Council] should be considered new and material evidence in that it was not a part of the record as of the date of the ALJ['s D]ecision, was relevant in that it involved or was directly related to issues adjudicated by the ALJ, and related to the period of time on or before the date of the ALJ['s D]ecision. Even though the subject evidence post-dated the ALJ['s D]ecision, it was reasonably related to the time period adjudicated by the ALJ.

---

[10] The Appeals Council also noted that two of the newly submitted records (walker and cane prescriptions) were actually duplicates of records that were among the exhibits before the ALJ. Tr. at 36.

[11] Plaintiff asserts parenthetically that "[t]hese records cannot be referenced because they were purposefully not made a part of the record by the Appeals Council," citing the Council's list of records as compared to the index in the administrative transcript. Pl.'s Mem. at 5. Plaintiff offers no further information or detail about the records that he claims were "not made a part of the record." Id. Moreover, he did not submit any additional records to this Court.

-16-

Id. at 8. Nowhere does Plaintiff point to any specific records or evidence to support his argument.

Upon review, the majority of the evidence provided to the Appeals Council is chronologically irrelevant to the period at issue because the evidence reflects changes in Plaintiff's condition that occurred after the ALJ's Decision.[12] The records do not offer material, non-cumulative information regarding the relevant period. The two treatment notes from June 2014, for instance, state that Plaintiff's back pain was worsening—and there is no indication that this related to the period at issue in the Decision. See Tr. at 215-24 (June 2014 records). More significantly, on July 5, 2014, Plaintiff was involved in an automobile accident that apparently aggravated his back pain, among other conditions, and many of the records following this date specifically address his post-accident status. See, e.g., Tr. at 102-36. Other than evidence concerning changes to Plaintiff's condition in the time since the ALJ's Decision, the post-Decision records provide information that was already well documented in the evidence before the ALJ.

Accordingly, overall, the evidence Plaintiff submitted to the Appeals Council does not render the denial of benefits erroneous because "[t]he additional evidence was either cumulative of evidence before the ALJ or was not chronologically relevant, and none of it undermine[s] the substantial evidence supporting the ALJ's decision." Mitchell, 771 F.3d at 785 (citations omitted).

## V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

---

[12] Indeed, some of the records deal with matters entirely unrelated to the claims or the period under review—including, for instance, treatment for a finger laceration that occurred on July 10, 2014. See, e.g., Tr. at 48-56.

1.     The Clerk of Court is directed to enter judgment pursuant to 42 U.S.C. § 1383(c)(3) and sentence four of § 405(g), **AFFIRMING** the Commissioner's final decision.

2.     The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 23, 2017.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

clr
Copies to:
Counsel of record